# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DURRELL A. PUCKETT, | Case No. 1:12-cv-00948 DLB PC |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | [ECF No. 32] |
| R. ZAMORA, et al., | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT |
| Defendants. | [ECF No. 37] |

## I. Background

Plaintiff Durrell A. Puckett ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on June 12, 2012. The parties have voluntarily consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

On March 13, 2013, the Court issued orders dismissing certain claims and defendants and finding service appropriate for other defendants. On March 27, 2013, Plaintiff filed a motion to add additional defendants or amend the complaint, which the Court granted on March 28, 2013. On April 14, 2013, Plaintiff filed a First Amended Complaint. (ECF No. 14.) On September 30, 2013, the Court issued an order finding that this action shall proceed against Defendants Zamora, Rodriguez, and Acevedo for excessive force and against Defendant Gutierrez and six Doe Defendants for failing to intervene to protect Plaintiff's safety in violation of the Eighth

Amendment.

On May 2, 2014, Plaintiff filed a motion for summary judgment. (ECF No. 32.) On June 20, 2014, Defendants filed a cross-motion for summary judgment. (ECF No. 37.) On June 30, 2014, Plaintiff filed an opposition. (ECF No. 38.) Defendants filed a reply (ECF No. 39) on July 2, 2014. The motions have been submitted upon the record without oral argument.[1] Local Rule 230(*l*). For the reasons set forth below, the Court will deny Plaintiff's motion for summary judgment. The Court will grant Defendants' cross-motion for summary judgment on the ground that Plaintiff's claim of excessive force against Defendants Rodriguez and Acevedo as it pertains to the initial takedown of Plaintiff is barred by Heck v. Humphrey, 512 U.S. 477, 483-87 (1994). The cross-motion will be denied on all other grounds.

**II.    Legal Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). Plaintiff bears

---

[1] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

2

the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. <u>In re Oracle Corp. Sec. Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, <u>Soremekun</u>, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

## III. <u>Plaintiff's Claim</u>[2]

Plaintiff was incarcerated at Corcoran State Prison ("CSP") in Corcoran, California, where the events giving rise to this action are alleged to have occurred. Plaintiff names as Defendants correctional officers R. Zamora, P. Rodriguez, C. Acevedo, R. Gutierrez, and six Doe Defendants.

Plaintiff alleges the following. Defendant Zamora attacked Plaintiff on an unknown date. After the incident, Defendant Zamora and Rodriguez came to his cell and threatened Plaintiff. On January 10, 2012, they both stated that they would beat up Plaintiff if he came out of his cell. Defendants Rodriguez and Acevedo returned an hour later to take Plaintiff to the mental health group. Defendant Rodriguez slapped Plaintiff, and Defendant Acevedo tried to trip Plaintiff and used racial slurs. As Plaintiff is knocked to the ground, Defendants Acevedo and Rodriguez both started to punch Plaintiff. Defendant Zamora came running from outside and kicked Plaintiff in the ribs. Defendant R. Gutierrez, along with six Doe Defendants, stood by and watched as Plaintiff screamed for help. Defendants stated that they did this because Plaintiff had a camera interview

---

[2] Plaintiff's complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. <u>Jones v. Blanas</u>, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible.

regarding a prior use of force incident. Plaintiff contends that he notified Defendant Gipson of this but she did nothing. Since the incident, Plaintiff is paranoid, has flashbacks, and suicidal thoughts.

### IV. Undisputed Facts[3]

1. Plaintiff Durrell Puckett (G-05549) is an inmate in the lawful custody of the California Department of Corrections and Rehabilitation (CDCR). (Delgado Decl., Exs. A, B.)

2. Plaintiff was housed at California State Prison, Corcoran (CSP-Corcoran) at all times relevant to this case. (Delgado Decl., Exs. A, B.)

3. On January 10, 2012, Correctional Officer Rodriguez and another officer[4] were attempting to escort Plaintiff from his housing unit to group therapy in the gym. (Rodriguez Decl. ¶ 4.)

4. Defendant Rodriguez was positioned on Plaintiff's left side and the other officer was on his right. (Rodriguez Decl. ¶ 4.)

5. Plaintiff's hands were cuffed behind his back, and he was wearing a spit mask because he had been involved in an assault on a Correctional Sergeant just ten days prior.[5] (Gutierrez Decl. ¶ 3; Rodriguez Decl. ¶ 4.)

6. At some point during the escort, Defendant Rodriguez took Plaintiff to the ground.[6] (Rodriguez Decl. ¶ 6.)

7. Once Plaintiff was taken to the ground, Defendant Zamora responded from inside the housing unit. (Gutierrez Decl. ¶¶ 6, 7; Rodriguez Decl. ¶¶ 7, 9; Zamora Decl. ¶¶ 3, 4.)

8. Officers Zamora and Gutierrez helped Plaintiff to his feet, and then escorted him to his cell. (Gutierrez Decl. ¶ 8; Zamora Decl. ¶¶ 6, 7.)

9. Plaintiff was medically examined at his cell a few minutes later. (Delgado Decl. Ex. E [CDCR Form 837—Crime/Incident Report, p. 2]; Ex. F [CDCR Form 7219—Medical Report of

---

[3] Facts which are immaterial to resolution of Defendants' motion for summary judgment, unsupported by admissible evidence, and/or redundant are omitted.

[4] The parties dispute the identity of the second escort officer. Plaintiff maintains it was Defendant Acevedo. (Pl.'s Statement of Undisputed Facts "PSUF" 4.) Defendant Acevedo denies he was the second officer. (Acevedo Decl. ¶ 2.) Defendant Gutierrez states he was the second escort officer. (Gutierrez Decl. ¶ 3.)

[5] Defendants state Plaintiff was wearing a spit mask because he had attempted to spit on the Correctional Sergeant. Plaintiff disputes this and claims this incident occurred because Defendant Zamora attacked him.

[6] The parties have completely different accounts of how and why the takedown occurred.

4

Injury or Unusual Occurrence]; Gutierrez Decl. ¶ 8; Zamora Decl. ¶ 7.)

10.     Medical staff completed a medical evaluation form, which noted that Plaintiff did not have any visible injuries at the time of the examination. (Delgado Decl. Ex. F [CDCR Form 7219—Medical Report of Injury or Unusual Occurrence].)

11.     Plaintiff was issued a Rules Violation Report that charged him with "Resisting a Peace Officer Resulting in Use of Force" in violation of state law. (Delgado Decl. Ex. D [CDC Form 115—Rules Violation Report, p. 1].)

12.     At a disciplinary hearing several weeks later, Plaintiff was found guilty of the offense. (Delgado Decl. Ex. D [CDC Form 115—Rules Violation Report, pp. 1, 4].)

13.     Plaintiff forfeited 90 days of good-time credit, among other penalties, as a result of the guilty finding. (Delgado Decl. Ex. D [CDC Form 115—Rules Violation Report, p. 1].)

14.     The hearing officer's guilty finding was based, among other things, on: (1) Officer Rodriguez's written report which documented Plaintiff's verbal and physical threats; and (2) the investigative report, which contained reports from staff eyewitnesses that corroborated Officer Rodriguez's narrative of events. (Delgado Decl. Ex. D [CDC Form 115—Rules Violation Report, p. 4].)

**V.     Discussion**

   **A.     Heck Bar**

Defendant Rodriguez argues that Plaintiff's claim, at least as it concerns the takedown of Plaintiff by Defendant Rodriguez, is barred under Heck v. Humphrey, 512 U.S. 477, 483-87 (1994). Defendant's argument is persuasive.

It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief. Wilkinson v. Dotson, 544 U.S. 74, 78, 125 S.Ct. 1242 (2005). Often referred to as the favorable termination rule or the Heck bar, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement - either directly through an injunction compelling speedier release or *indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody*." Wilkinson, 544 U.S. at 81

(emphasis added).  Thus, "a state prisoner's [section] 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81-2.

It is uncontroverted that Plaintiff lost ninety days of good-time credits as a result of being found guilty in a prison disciplinary proceeding of "Resisting a Peace Officer Resulting in Use of Force." (Delgado Decl. Ex. D.)  In finding Plaintiff guilty, the hearing officer found Defendant Rodriguez's narrative of the events to be true based on corroborating written testimony by other staff.  According to Defendant Rodriguez's narrative, he and his partner Defendant Gutierrez were escorting Plaintiff from his cell to the gym.  Plaintiff was wearing a spit-shield.  While waiting for clearance for the escort to proceed, Plaintiff became agitated and stated, "If I didn't have this mask on I would spit in your face."  Defendant Rodriguez told Plaintiff to remain quiet and keep walking.  Plaintiff then twisted his body to the left toward Defendant Rodriguez in an aggressive manner.  Defendant Rodriguez had control of Plaintiff's left forearm with his right hand.  Utilizing his left hand, he grabbed Plaintiff's left shoulder area of his jumpsuit and pulled him downward towards the ground into the prone position, while giving verbal orders to get down.  Once in the prone position, Defendant Rodriguez summoned staff to assist.

In Plaintiff's version of the events, Defendants Rodriguez and Acevedo escorted him. During the escort, Defendant Rodriguez slapped Plaintiff while Defendant Acevedo tried to trip him.  Plaintiff states that both made racial slurs.  Plaintiff claims that Defendant Rodriguez took him to the ground without provocation, and he claims that Defendant Rodriguez "slammed" him to the ground.

A finding in Plaintiff's favor on his excessive force claim would mean that Defendants Rodriguez and Acevedo used physical force to maliciously and sadistically cause Plaintiff harm rather than in a good-faith effort to maintain or restore discipline.  The two versions of events are entirely inconsistent with one another. If Plaintiff prevailed on his claim that Defendants, unprovoked by Plaintiff and without any justification, used excessive physical force against him in

taking him to the ground, his success would necessarily invalidate the result of the disciplinary hearing, which was based on the finding that Plaintiff instigated the entire incident by refusing direct orders to stay quiet and keep walking, and by suddenly twisting his body aggressively toward Defendant Rodriguez, which caused Defendants to have to take him to the ground to regain control over him.  Therefore, the Court finds that Plaintiff's excessive force claim against Defendant Rodriguez for his takedown of Plaintiff is barred by the favorable termination rule, and the claim must be dismissed.  Heck, 512 U.S. at 489 (until and unless favorable termination of the conviction or sentence occurs, no cause of action under section 1983 exists).

Likewise, the Court finds that Plaintiff's claims concerning Defendant Acevedo's alleged actions during the escort and takedown are barred by the favorable termination rule.  The hearing officer found that Defendant Gutierrez was the second escort officer, not Acevedo.  A favorable ruling on Plaintiff's claim that Defendant Acevedo provoked Plaintiff, threatened him, and used excessive and unnecessary force during the escort and takedown would invalidate the findings of the disciplinary hearing officer that Defendant Acevedo had no part in the escort and takedown. Therefore, Plaintiff's excessive force claim as it pertains to Defendant Acevedo during the escort and takedown is barred by the favorable termination rule.  Wilkinson, 544 U.S. at 81-2; Edwards v. Balisok, 520 U.S 641, 80-81, 117 S.Ct. 1584 (1997).

However, Defendants do not argue, and the Court does not find, that the favorable termination rule bars Plaintiff's claims of excessive force and failure to protect once Plaintiff was taken to the ground.  Plaintiff claims that once he was taken to the ground, Defendants used excessive force against him by physically beating him while he was restrained.  Plaintiff claims that Defendant Zamora ran in from outside and kicked Plaintiff in the ribs.  He claims that Defendants Acevedo and Rodriguez repeatedly punched Plaintiff while he was on the ground.  He further claims that Defendant Gutierrez, along with six Doe Defendants, stood by and watched as Plaintiff screamed for help.  Plaintiff's success on these claims would not necessarily invalidate the result of the disciplinary hearing, because the guilty finding concerned only the initial takedown and the necessity of the force used by Defendant Rodriguez in responding to Plaintiff's provocation.  Therefore, the Court finds that Plaintiff's claims pertaining to Defendants' actions

7

once Plaintiff had been taken to the ground are not barred under Heck.

**B.  Excessive Force**

Plaintiff claims that Defendants Acevedo, Rodriguez and Zamora assaulted him and used excessive force while he was lying prone on the ground. Plaintiff contends that the uncontroverted facts demonstrate that he is entitled to summary judgment on his claim. On the other hand, Defendants contend that the undisputed facts would not allow a reasonable jury to return a verdict for Plaintiff.

1.  Legal Standard

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992). What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at issue, with the objective component being contextual and responsive to contemporary standards of decency. Hudson, 503 U.S. at 8 (quotation marks and citations omitted). For excessive force claims, the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins, 559 U.S. at 37, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 7) (quotation marks omitted).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. Wilkins, 559 U.S. at 37, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 9) (quotation marks omitted). Necessarily excluded from constitutional recognition is the *de minimis* use of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. Wilkins, 559 U.S. at 37-8, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 9-10) (quotations marks omitted). In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (quotation marks and citations omitted).

While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does

not end it. Hudson, 503 U.S. at 7. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency. Wilkins, 559 U.S. at 37, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 9) (quotation marks omitted). Thus, it is the use of force rather than the resulting injury which ultimately counts. Id. at 37-8.

### 2. Analysis

Defendants move for summary judgment based on their contention that Plaintiff instigated the incident by refusing direct orders and by aggressively turning on Defendant Rodriguez, and that they used only the minimal amount of force necessary to maintain control. However, for the reasons that follow, genuine disputes of material fact exist that prevent summary judgment.

According to Plaintiff, once he was taken to the ground, he did not resist and remained prone. He contends that Defendants Rodriguez and Acevedo then repeatedly punched him despite his lack of resistance. He further contends that Defendant Zamora rushed in and delivered a kick to his ribs.

Defendants first contend that Defendant Acevedo was not even present. Defendants point to various pieces of evidence such as the Rules Violation Report and the Crime/Incident Report which reflect that it was Gutierrez who was the second escort officer. (Delgado Decl. Exs. D, E.) Nevertheless, Plaintiff's statements in his verified First Amended Complaint should be taken into account in determining whether a dispute of fact exists, and Plaintiff maintains that it was Defendant Acevedo who was the second escort officer who assaulted him. In addition, Plaintiff has submitted two declarations from inmates that state Defendant Acevedo was involved. (Pl.'s Mot. Summ. J.) Thus, there is a material dispute whether Acevedo was involved.

Defendants further contend that Plaintiff was taken to the ground in a fluid motion, that once Plaintiff was on the ground Rodriguez called for assistance, and that Defendant Zamora responded and took responsibility for the escort. Defendants contend they never attacked Plaintiff or admitted to attacking Plaintiff. They deny having threatened, beaten, or kicked Plaintiff in any way. Thus, there is a material dispute whether Defendants assaulted Plaintiff.

Defendants argue that the lack of injury to Plaintiff demonstrates that Plaintiff's version of the incident is entirely unsupported. As noted above, while the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it. Hudson, 503 U.S. at 7. Taking the facts in the light most favorable to Plaintiff, a genuine dispute exists as to whether Defendants used force maliciously or sadistically for the purpose of causing harm. Therefore, the Court finds that Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment must be denied.

### C. Failure to Protect

Plaintiff also claims that Defendant Gutierrez and six other Doe Defendants stood by and watched Plaintiff getting assaulted despite Plaintiff's pleas for help.

#### 1. Legal Standard

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (quotations omitted). Prison officials have a duty to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833-34 (quotations omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

#### 2. Analysis

It is disputed whether Defendants physically assaulted Plaintiff while Plaintiff was lying prone on the ground. It is undisputed that Defendant Gutierrez and other staff were in the vicinity when Plaintiff was being restrained on the ground. Plaintiff contends that Gutierrez and Doe Defendants stood by and allowed Plaintiff to be beaten and kicked by Defendants Rodriguez,

Acevedo, and Zamora. Defendants claim no physical assault by any Defendant took place; therefore, there was no reason to protect Plaintiff. Taking the facts in the light most favorable to Plaintiff, a genuine dispute exists as to whether Defendants used force maliciously or sadistically for the purpose of causing harm. A genuine dispute further exists as to whether Plaintiff pleaded for aid, but Defendant Gutierrez and Doe Defendants ignored him. Therefore, the Court finds that Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment must be denied.

### D.     Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity.

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auer, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Mallei v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

In this instance, the evidence viewed in the light most favorable to Plaintiff demonstrates a constitutional violation, and there exist triable issues of fact as to whether that right was violated. Therefore, the Court proceeds without further discussion to the second step of the inquiry.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508 (2002). While the reasonableness inquiry may not be undertaken as a broad, general proposition, neither is official action entitled to protection "unless the very action in question has previously been held unlawful." Hope, 536 U.S. at 739. "Specificity only requires that the unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances," Hope, 536 U.S. at 741.

In 2012, an inmate's right to be free from the use of excessive physical force was clear. Hudson, 503 U.S. at 6-7 (articulating the standard for excessive force claims under the Eighth Amendment). Likewise, the duty to protect prisoners from violence at the hands of others was clear. Farmer, 511 U.S. at 833-34

The Court recognizes that the existence of material factual disputes does not necessarily preclude a finding of qualified immunity. Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," Ashcroft v. al-Kidd, __ U.S. __, __, 131 S.Ct. 2074, 2085 (2011). Here, however, assuming the facts in the light most favorable to Plaintiff, no reasonable officer would have believed that kicking and hitting an inmate who had complied with orders, and did not pose a threat, was lawful, nor would a reasonable officer have believed that standing by while others beat and kicked such an inmate was lawful.

Accordingly, Defendants are not entitled to qualified immunity.

## VI.    Conclusion and Order

For the reasons set forth above, the Court HEREBY ORDERS:

1. Plaintiff's motion for summary judgment is DENIED; and

2. Defendant's cross-motion for summary judgment is GRANTED IN PART and DENIED IN PART as follows:

    a. Defendant's cross-motion is GRANTED on Plaintiff's Eighth Amendment claims of excessive force and failure to protect pertaining to the initial takedown of Plaintiff;

    b. Defendant's cross-motion is DENIED on all other grounds.

3. This matter will be set for jury trial by separate order.

IT IS SO ORDERED.

Dated: **February 22, 2015**         /s/ *Dennis L. Beck*
UNITED STATES MAGISTRATE JUDGE